UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIRAM MENDES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>    Defendant. | Case No. 14-cv-03826-SI<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 23 |

Defendant Fedex Ground Package System, Inc. ("FedEx") moves to dismiss the first amended complaint ("FAC") filed by plaintiffs Costaneira Transport, Inc ("CTI"), KR Express, Inc. ("KR Express"), Hiram Mendes, and Kim Raney (collectively "plaintiffs"[1]). The motion, which seeks dismissal for failure to state a claim, is set for hearing on January 16, 2015. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant FedEx's motion to dismiss, with leave to amend.

**BACKGROUND**

KR Express and CTI entered into contracts with FedEx (the "Operating Agreements") to provide package delivery services under the moniker "FedEx Ground" in 2009 and 1999, respectively. FAC ¶ 9. Under the Operating Agreements, plaintiffs were required to pay for FedEx

---

[1] This order refers to CTI and KR Express collectively as "corporate plaintiffs," and refers to Mendes and Raney collectively as "individual plaintiffs." Although not specifically pled in the FAC, it appears that Raney and Mendes are principals at KR Express and CTI, respectively. *See* Docket No. 23, Def. Mot. at 1; *see also* California Secretary of State website http://kepler.sos.ca.gov/ (listing Raney as the agent for service of process at KR Express).

uniforms, communications and data equipment, equipment washing, Department of Transportation inspections, and drug testing. FAC ¶ 21. Plaintiffs were also required to purchase or lease vehicles in accordance with FedEx specifications. *Id.* Both Operating Agreements provided for automatic renewal for a term of one year, subject to termination upon notice by either party. *Id.* ¶ 10. Corporate plaintiffs and FedEx allowed the Operating Agreements to automatically renew every year until 2012. *Id.* ¶¶ 11-12. Paragraph 11.2 of the Operating Agreements governs the terms of renewal and provides as follows:

> **11.2 Renewal Terms.** This agreement shall automatically renew for successive terms of one year each after expiration of the initial term unless [corporate plaintiffs] or [FedEx] provides the other party notice of non-renewal in writing at least 30 days prior to the expiration of the initial term or any successive renewal term.

Docket No. 13-2, Brenner Decl. Exh. A Part 1; Docket No. 13-7, Brenner Decl. Exh. B Part 1.

Paragraph 13 prohibits oral modification. It states that the Operating Agreements "constitute the entire agreement and understanding between the parties…[and] shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties." *Id.*

Plaintiffs allege that on multiple occasions, they were assured by FedEx that the Operating Agreements would not be canceled absent good cause.[2] FAC ¶¶ 13-14. Relying on these assurances, plaintiffs "purchased new equipment, bought routes from other contractors, made investments in their companies, and otherwise worked to grow FedEx's business." *Id.* at ¶ 15. In November of 2012, FedEx sent CTI a letter indicating that it was considering not renewing the CTI contract; KR Express received a similar letter in January of 2013. *Id.* ¶¶ 16, 19. Both corporate plaintiffs were subsequently notified in writing of FedEx's intent not to renew their respective Operating Agreements pursuant to paragraph 11.2. *Id.* ¶¶ 18, 20.

On August 22, 2014, plaintiffs filed a complaint against FedEx, premised on diversity jurisdiction, alleging causes of action for (1) breach of implied contract, (2) wrongful termination, and (3) promissory estoppel. Docket No. 1. On October 17, 2014, FedEx filed a motion to dismiss

---

[2] While it is not explicitly stated in the FAC, it appears that none of these alleged assurances was made in writing.

2

1   the complaint. Docket No. 13. On November 18, 2014, the Court approved the parties' stipulation
2   whereby plaintiffs were permitted to amend their complaint, and defendant agreed to withdraw its
3   motion to dismiss. Docket No. 21. On November 19, 2014, plaintiffs filed the FAC. Docket No.
4   22. Now before the Court is FedEx's motion to dismiss the FAC for failure to state a claim.
5   Docket No. 23.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Although factual allegations are generally accepted as true for purposes of the motion, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Court, for example, need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Van Hook v. Curry*, No. C 06-3148 PJH (PR), 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009) ("When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings.").

As a general rule, the Court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However,

pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The Court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**DISCUSSION**

**I.   Choice of Law**

The Court must address a preliminary issue before proceeding to the substantive analysis of FedEx's motion. The parties dispute whether this case should be decided under California or Pennsylvania law. Paragraph 19 of the Operating Agreements state: "This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." Brenner Decl. Exh. A Part 1, Exh. B Part 1.

A court sitting in diversity jurisdiction applies the law of the forum state to determine choice of law issues. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); *see also Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992); *see also Washington Mutual. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001). Under this approach, the Court must first determine (1) whether the chosen state has a substantial relationship to the parties or the transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If the proponent of the choice of law clause demonstrates that either of these tests is met, then the Court must uphold the choice of law provision unless the opposing party carries its burden to show that (1) it is contrary to a fundamental California state policy, and (2) California has a materially greater interest than the chosen state. *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1035 (N.D. Cal. 2008), *citing Washington Mutual* 24 Cal. 4th at 917. A valid choice of law clause governs all disputes "arising from or related to that agreement, regardless of how they are

4

characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Nedlloyd* 3 Cal. 4th at 470.

FedEx notes that it is a corporation headquartered in Pennsylvania.[3] This is sufficient to demonstrate that the choice of law provision bears "a substantial relationship" to the parties, or that there is a "reasonable basis" for choosing to be governed by Pennsylvania law. *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1446, (2012) (defendant's primary place of business in Texas was a sufficient basis to apply Texas choice of law clause); *see also 1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 512-13 (2010) (reasonable basis existed for Washington choice of law provision even though Washington lacked a substantial relationship to the parties, where Washington was the closest jurisdiction to defendant's Canadian headquarters, and defendant had franchisees in multiple states). Plaintiffs' claim that "Pennsylvania has no relationship whatsoever" to the present action is therefore without merit. Pl. Opp'n at 3.

FedEx has adequately demonstrated that Pennsylvania bears a substantial relationship to the parties. The burden therefore shifts to plaintiffs to show that applying Pennsylvania law would be contrary to a fundamental California policy, and that California has a materially greater interest at stake than does Pennsylvania. Plaintiffs devote three sentences to this endeavor. They cite *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981 (9th Cir. 2014), a case in which the Ninth Circuit found certain classes of FedEx personnel to be employees rather than independent contractors. Plaintiffs also cite *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 332, 8 P.3d 1089 (2000) for the proposition that California "permits litigation of implied contracts." Pl. Opp'n at 3. However, plaintiffs fail to explain what fundamental state policies are espoused by these two cases; and furthermore, do not even argue that a different result would be required under Pennsylvania law.[4] There are no "bright-line rules for determining what is and what is not contrary to a fundamental policy of California." *Discover Bank v. Superior Court*, 134 Cal. App. 4th 886,

---

[3] FedEx requests the Court to take judicial notice that its principal place of business is in Pennsylvania, and provides copies of supporting information from the web sites of the offices of both the Pennsylvania and the California Secretary of State. Plaintiff did not oppose the request, and it is GRANTED.

[4] FedEx contends that California and Pennsylvania law dictate the same result regarding plaintiffs' cause of action for breach of implied contract. Docket No. 27, Def. Rep. at 4.

893 (2005); *see also* Restatement (Second) of Conflict of Laws § 187(2) Comment (g) ("No detailed statement can be made of the situations where a 'fundamental' policy of the state of the otherwise applicable law will be found to exist."). However, at a minimum, showing that applying the choice of law clause would contravene a fundamental policy of the forum state requires (1) identifying some fundamental state policy, and (2) showing that the laws of the two states differ. Merely citing favorable case law from the forum state, without more, is not enough to meet plaintiffs' burden. Accordingly, the Court will enforce the Pennsylvania choice of law provision bargained for by the parties.

## II. Breach of Implied Contract

Plaintiffs agree that FedEx complied with paragraph 11.2 of the Operating Agreements by giving timely notice of its intent not to renew. However, plaintiffs argue that FedEx's conduct gave rise to an additional implied term which only allowed FedEx to effectuate non-renewal for cause. Specifically, plaintiffs allege that FedEx's historical practice of allowing the Operating Agreements to automatically renew, and its verbal assurances that it would not terminate the Operating Agreements except for cause, gave rise to this implied term. FAC ¶ 23. Each argument is addressed in turn.

When interpreting the terms of a contract, "the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. Gen. Felt Indus., Inc.*, 2000 PA Super 749 A.2d 978, 980 (2000). "Generally, courts will not imply a contract that differs from the one to which the parties explicitly consented…We are not to assume that the language of the contract was chosen carelessly or in ignorance of its meaning." *E.R. Linde Const. Corp. v. Goodwin*, 2013 PA Super 68 A.3d 346, 349 (2013) (internal citations omitted). "Where…the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 588 Pa. 205, 212, 903 (2006).

As described above, paragraph 11.2 of the Operating Agreements provides for automatic

1  renewal each year, unless either party provides written notice of non-renewal 30-days prior to the
2  contract expiration date. Brenner Decl. Exh. A Part 1, Exh. B Part 1. Timely notice is all that is
3  required for either party to opt out of the otherwise automatic renewal and effectively cancel the
4  contract. Under these circumstances, a historical practice of allowing the Operating Agreements to
5  renew does not give rise to a new implied term. Under plaintiff's argument, the parties' previous
6  automatic renewals allowed plaintiffs to adversely possess the right to have the contract renewed
7  in perpetuity absent a showing of cause by FedEx. Plaintiffs cite no law supporting this novel
8  theory, and the Court declines to adopt it.

9  Next plaintiffs argue that FedEx's alleged assurances that it would not "cancel" the Operating Agreements absent "good cause" created a new implied contractual term. FAC 13-14, 17, 23. Defendant counters that paragraph 13 of the Operating Agreements specifically prohibits subsequent oral modification. Paragraph 13 states that the Operating Agreements and related addenda "constitute the entire agreement and understanding between the parties…[and] shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties." Brenner Decl. Exh. A Part 1, Exh. B Part 1.

16  Parties may orally modify a written contract only when their "conduct clearly shows an intent to waive the provision prohibiting non-written modification." *Douglas v. Benson,* 294 Pa. Super. 119, 128, 439 A.2d 779, 783 (1982). "An oral contract changing the terms of a written contract must be of such specificity and directness as to leave no doubt of the intention of the parties to change what they had previously solemnized by a formal document." *Gloeckner v. Sch. Dist. of Baldwin Twp.,*175 A.2d 73, 75 (1961). An oral agreement to modify a written contract must be proven by "evidence which is clear, precise and convincing." *Pellegrene v. Luther*, 403 Pa. 212, 216, 169 A.2d 298, 300 (1961); *see also In re Estate of Bowman*, 797 A.2d 973, 977 (2002).

25  The alleged assurances described by plaintiff do not meet the burden of showing an unequivocal intent to modify the written terms of the contract. A promise not to "cancel" the Operating Agreements absent good cause does not clearly indicate an intent to modify the provision governing renewal (paragraph 11.2). For example, defendant's alleged assurances may

have been directed at paragraph 12 of the Operating Agreements – governing mid-term contract termination – which in many circumstances requires good cause or mutual assent of the parties. Brenner Decl. Exh. A Part 1, Exh. B Part 1. Additionally, the parties amended the Operating Agreements in writing on numerous occasions but never altered the requisites for contract renewal or the bar against oral modifications. *See* Brenner Decl. Exh A Parts 1-5, Exh. B Parts 1-2. In any event, the question before the Court is not to discern defendant's subjective intent when it made the alleged assurances. Rather, plaintiffs must allege facts that demonstrate the requisite "specificity and directness" to effectuate modification of the Operating Agreements in light of paragraph 13's express prohibition against such modifications. Plaintiff's allegations of generalized assurances not to "cancel" the contract absent good cause are insufficiently specific, and do not meet this burden. Accordingly, the Court GRANTS defendant's motion to dismiss this cause of action, with leave to amend.

## II. Wrongful Termination

Plaintiffs argue that defendant's non-renewal of the Operating Agreements without good cause constituted wrongful termination of the individual plaintiffs. FedEx argues (1) that the individual plaintiffs were not parties to the Operating Agreements and thus did not enter into an employment agreement with FedEx; and (2) even if the individual plaintiffs were employees of FedEx, they have not overcome the presumption of at-will employment.

"In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Janis v. AMP, Inc.*, 2004 856 A.2d 140, 144 (2004), *citing Rapagnani v. The Judas Company,* 736 A.2d 666, 669 (1999). "A clear and definite intention to overcome the presumption must be expressed in the contract." *Grose v. Procter & Gamble Paper Products*, 2005 PA Super 8, ¶ 10, 866 A.2d 437, 441 (2005). "Where the sole evidence of the relationship between the parties is found in an agreement and where the terms of the agreement are not in dispute, it is the function of the court, not the jury, to determine the relationship between the

8

parties." *Urbano v. STAT Courier, Inc.*, 2005 PA Super 190, ¶ 9, 878 A.2d 58, 61 (2005).

Plaintiffs rely on *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981(9th Cir. 2014), which decided that, under California law, certain classes of FedEx drivers were employees rather than independent contractors. There are a number of issues which distinguish *Alexander* from the case at bar. First, in *Alexander* both parties agreed that that California law controlled the dispute; therefore the court did not decide whether its interpretation of California employment law was a fundamental state policy sufficient to require the application of California law despite a contractual agreement between the parties to the contrary. Second plaintiffs concede that the holding of *Alexander* was confined to FedEx drivers, not the corporations that employed them. Pl. Opp'n at 6. Here, corporate plaintiffs, not the individual plaintiffs, are parties to the Operating Agreements. Third, in *Alexander* plaintiffs sought to recover unpaid wages that they were due on account of their employee status. Here, plaintiffs have failed to articulate why conferring them with employee status would entitle them to otherwise unavailable relief given the strong presumption in favor of at-will employment. As the *Alexander* court noted, "termination for cause is consistent with both employee and independent contractor status." 765 F.3d at 994-95.

In essence, plaintiffs attempt to bootstrap their breach of contract cause of action into a claim for wrongful termination. However, as discussed above, plaintiffs have failed to adequately plead that any contract was breached. According to the language of the written contract, FedEx was free to cancel the Operating Agreements absent good cause pursuant to paragraph 11.2. The individual plaintiffs therefore cannot claim that they have been wrongfully terminated.[5]

Accordingly, the Court GRANTS defendant's motion to dismiss plaintiff's cause of action for wrongful termination, with leave to amend.[6]

---

[5] Therefore, the Court need not decide whether any employment relationship existed.
[6] Plaintiffs third cause of action for promissory estoppel merely seeks damages premised upon defendant's alleged wrongful termination. Therefore, defendant's motion to dismiss this cause of action is GRANTED for the same reasons.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss the FAC, with leave to amend. Plaintiffs may file an amended complaint no later than January __, 2015. This resolves Docket No. 23.

**IT IS SO ORDERED**.

Dated: January 15, 2015

_____
SUSAN ILLSTON
United States District Judge